IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SARAHROSE K.,[1]                                6:19-cv-01640-BR

       Plaintiff,                       OPINION AND ORDER

v.

Commissioner, Social
Security Administration,

       Defendant.


**JEFFREY HUGH BAIRD**
Dellert Baird Law Office
6525 California Avenue SW #101
Seattle, WA 98136
(206) 937-4112

       Attorneys for Plaintiff

**BILLY J. WILLIAMS**
United States Attorney
**RENATA GOWIE**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1003

---

    [1] In the interest of privacy this Court uses only the first
name and the initial of the last name of the nongovernmental
party in this case.

1 - OPINION AND ORDER

**MICHAEL W. PILE**
Acting Regional Chief Counsel
**BENJAMIN J. GROEBNER**
Social Security Administration
Office of the General Counsel
701 Fifth Avenue
Suite 2900 M/S221A
Seattle, WA 98104-7075
(206) 615-2494

      Attorneys for Defendant

**BROWN, Senior Judge.**

     Plaintiff Sarahrose K. seeks judicial review of a final decision of the Commissioner of the Social Security Administration (SSA) in which he denied Plaintiff's applications for Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB) under Titles XVI and II of the Social Security Act.

     For the reasons that follow, the Court **AFFIRMS** the decision of the Commissioner and **DISMISSES** this matter.

## ADMINISTRATIVE HISTORY

     Plaintiff filed her application for DIB on September 17, 2015, and her application for SSI on October 16, 2015.  Tr. 288, 301.[2]  Plaintiff alleged a disability onset date of July 25, 2009.  Her applications were denied initially and on

---

    [2] Citations to the official transcript of record filed by the Commissioner on February 18, 2020, are referred to as "Tr."

2 - OPINION AND ORDER

reconsideration.  An Administrative Law Judge (ALJ) held a hearing on July 30, 2018.  Tr. 41-89.  At the hearing Plaintiff, who was represented by an attorney, amended her alleged onset date to February 12, 2015.  Tr. 46.  Plaintiff and a vocational expert (VE) testified at the hearing.

On September 6, 2018, the ALJ issued an opinion in which he found Plaintiff is not disabled and, therefore, is not entitled to benefits.  Tr. 10-38.  Pursuant to 20 C.F.R. § 404.984(d) that decision became the final decision of the Commissioner on August 7, 2019, when the Appeals Council denied Plaintiff's request for review.  Tr. 1-6.  *See Sims v. Apfel*, 530 U.S. 103, 106-07 (2000).

## <u>BACKGROUND</u>

Plaintiff was born on October 7, 1979.  Tr. 288.  Plaintiff was 38 years old at the time of the hearing.  Plaintiff has a high-school education.  Tr. 30.  Plaintiff has past relevant work experience as an institutional cleaner, convenience-store cashier, cashier/checker, and sales attendant.  Tr. 30.

Plaintiff alleges disability due to "severe back injury," degenerative disc disease, sciatica, "congenital kidney disease," gestational diabetes, and "difficulty standing/walking/sitting for any period."  Tr. 127.

Except when noted, Plaintiff does not challenge the ALJ's

summary of the medical evidence.  After carefully reviewing the medical records, this Court adopts the ALJ's summary of the medical evidence.  *See* Tr. 19-25.

## STANDARDS

The initial burden of proof rests on the claimant to establish disability.  *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).  To meet this burden a claimant must demonstrate her inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The ALJ must develop the record when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence.  *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011)(quoting *Mayes v. Massanari,* 276 F.3d 453, 459-60 (9th Cir. 2001)).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole.  42 U.S.C. § 405(g).  *See also Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012).  Substantial evidence is "relevant evidence that a reasonable mind might accept as adequate to support a conclusion."  *Molina*, 674 F.3d. at 1110-11

(quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009)).  "It is more than a mere scintilla [of evidence] but less than a preponderance." *Id.* (citing *Valentine*, 574 F.3d at 690).

The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence, and resolving ambiguities. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).  The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).  Even when the evidence is susceptible to more than one rational interpretation, the court must uphold the Commissioner's findings if they are supported by inferences reasonably drawn from the record. *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012). The court may not substitute its judgment for that of the Commissioner. *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).

## **DISABILITY ANALYSIS**

### I.   **The Regulatory Sequential Evaluation**

At Step One the claimant is not disabled if the Commissioner determines the claimant is engaged in substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I).  *See also Keyser v. Comm'r of Soc. Sec.*, 648 F.3d 721, 724 (9th Cir.

2011).

At Step Two the claimant is not disabled if the Commissioner determines the claimant does not have any medically severe impairments or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). *See also Keyser*, 648 F.3d at 724.

At Step Three the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal one of the listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). *See also Keyser*, 648 F.3d at 724. The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, he must assess the claimant's residual functional capacity (RFC). The claimant's RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a regular and continuing basis despite her limitations. 20 C.F.R. §§ 404.1520(e), 416.920(e). *See also* Social Security Ruling (SSR) 96-8p. "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent schedule." SSR 96-8p, at *1. In other words, the Social Security Act does not require complete incapacity to be disabled. *Taylor v. Comm'r of Soc.*

*Sec. Admin.*, 659 F.3d 1228, 1234-35 (9th Cir. 2011)(citing *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989)).

At Step Four the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work she has done in the past.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  *See also Keyser*, 648 F.3d at 724.

If the Commissioner reaches Step Five, he must determine whether the claimant is able to do any other work that exists in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  *See also Keyser*, 648 F.3d at 724-25.  Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can perform. *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010).  The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2.  If the Commissioner meets this burden, the claimant is not disabled.  20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

## **ALJ'S FINDINGS**

At Step One the ALJ found Plaintiff has not engaged in substantial gainful activity since her February 12, 2015, amended alleged onset date.  Tr. 16.

7 - OPINION AND ORDER

At Step Two the ALJ found Plaintiff has the severe impairments of lumbar degenerative disc disease, obesity, and carpal-tunnel syndrome.  Tr. 16.  The ALJ found Plaintiff's meralgia parasthetica, neck pain, knee pain, asthma, depression, and anxiety are not severe impairments.  Tr. 16-17.

At Step Three the ALJ concluded Plaintiff's medically determinable impairments or combination of impairments do not meet or medically equal one of the listed impairments in 20 C.F.R. part 404, subpart P, appendix 1.  Tr. 20.  The ALJ found Plaintiff has the RFC to perform light work

> in which she lifts 20 pounds occasionally and 10 pounds frequently; stands or walks six hours a day, and sits for six hours a day; can push and pull as much as she can carry; avoids ladders, ropes, and scaffolds; occasionally stoops, kneels, crouches, or crawls; occasionally climbs ramps or stairs; occasionally uses hand controls on the right and left; [and] time off task would be accommodated by regular breaks.

Tr. 17-18.

At Step Four the ALJ found Plaintiff is unable to perform her past work.  Tr. 30.

At Step Five the ALJ found Plaintiff can perform other work that exists in the national economy.  Accordingly, the ALJ found Plaintiff is not disabled.  Tr. 31.

## DISCUSSION

Plaintiff contends the ALJ erred when he (1) partially

rejected Plaintiff's testimony; (2) partially rejected the opinion of Theo Orchard, PA-C, treating physician's assistant; and (3) relied on the VE's testimony "without addressing [Plaintiff's] objections . . . based on objective data."

## I.   The ALJ did not err when he partially rejected Plaintiff's testimony.

Plaintiff alleges the ALJ erred when he partially rejected Plaintiff's testimony.

In *Cotton v. Bowen* the Ninth Circuit established two requirements for a claimant to present credible symptom testimony:  The claimant must produce objective medical evidence of an impairment or impairments, and she must show the impairment or combination of impairments could reasonably be expected to produce some degree of symptom.  *Cotton*, 799 F.2d 1403 (9th Cir. 1986), *aff'd in Bunnell v. Sullivan*, 947 F.2d 341 (9th Cir. 1991).  The claimant, however, need not produce objective medical evidence of the actual symptoms or their severity.  *Smolen*, 80 F.3d at 1284.

If the claimant satisfies the above test and there is not any affirmative evidence of malingering, the ALJ can reject the claimant's pain testimony only if he provides clear and convincing reasons for doing so.  *Parra v. Astrue,* 481 F.3d 742, 750 (9th Cir. 2007)(citing *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).  General assertions that the claimant's testimony is

not credible are insufficient.  *Id*.  The ALJ must identify "what
testimony is not credible and what evidence undermines the
claimant's complaints."  *Id*. (quoting *Lester*, 81 F.3d at 834).

    Plaintiff testified at the hearing that she cannot work due
to pain in "the nerves down [her] legs" originating in her back.
Tr. 58.  Plaintiff also stated she cannot sit or stand for more
than 15 minutes at a time because of her back and leg pain.  When
she stands

> one leg feels like it's a different size at times,
> and so, I have to move back and forth or put one
> leg up, put one leg down, or sit down . . . and
> put my feet up, or, you know. . . .  [S]ometimes I
> just go grab an ice pack and lay on the floor and
> call a friend to either come get my kids or watch
> them at my house so I can just be on the ice pack.

Tr. 59.  Plaintiff stated lying down for up to 20 minutes helps
to "take[] the pain off [her] lower back and changes the
sensation of the nerves in [her] legs."  Tr. 60.  After 20
minutes, however, lying down becomes "frustrating" because "it's
hard to be stuck lying down."  Tr. 61.  Although Plaintiff can
elevate her legs from a sitting position, her legs have to be
higher than chair height and it does not alleviate her pain if
she has been sitting for some time.  Plaintiff also testified she
cannot work due to carpal-tunnel syndrome.  She noted she cannot
drive because she cannot grip the steering wheel sufficiently,
she cannot hold a broom, she drops things "at least twice a day,
and she dropped her infant daughter."  Tr. 63.  Plaintiff also

has problems with her kidney, and "even just turning . . . at [her] waist feels like [her] kidney is flipping over [or] jumping around."  Tr. 64.

Plaintiff stated she gets overwhelmed and feels depressed because "not being able to do things physically is depressing." Tr. 66.  Plaintiff testified she also suffers from PTSD. Plaintiff has difficulty concentrating due to pain and often is unable to finish washing the dishes, to make complete meals, or to do laundry.  At the time of the hearing Plaintiff's two children were two and eight years old, and at least twice a week she has received help from friends to care for her children or to take care of household chores.

The ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record."  Tr. 30.  Specifically, the ALJ noted although Plaintiff complained of debilitating pain in her legs originating in her back, all of Plaintiff's x-rays and MRIs have shown only mild to moderate issues.  For example, a December 2015 x-ray of Plaintiff's lumbar spine reflected "mild to moderate loss of disc space height" at T12-L1 and L1-L2, which was "similar to the 10/16/13 study."  Tr. 761.  The x-ray also reflected a "prominent

anterior edge deformity of the L1 vertebral body," but this was "unchanged" from an October 2013 x-ray. Similarly, a January 2016 MRI of Plaintiff's lumbar spine reflected a "posterior disc osteophyte complex with slight left paracentral component which appears to cause mild central canal encroachment" at T11-T12; a "small "posterior disc osteophyte complex" with "no significant central or neural foraminal stenosis" at T12-L1; "no significant stenosis" at L1-L2 and L2-L3; a "mild annular bulge [with] . . . mild thickening of the posterior ligamentous structures . . .[,] at most mild bilateral neural foraminal stenosis[, and] no definite neural foraminal encroachment" at L3-L4; "minimal disc bulge [and] "at most mild neural foraminal stenosis" at L4-L5; and a "tiny central disc protrusion [and] . . . no significant central or neural foraminal stenosis" at L5-S1. Tr. 560-61. An April 2017 x-ray of Plaintiff's lumbar spine reflected "an old, moderate L1 vertebral compression with no new such finding[;] . . . mild multilevel degenerative disc disease" at T12-L1, L1-L2, L2-L3, L3-L4, and L4-L5; and "normal" spine alignment and curvature. Tr. 771. An April 2017 MRI of Plaintiff's lumbar spine showed "a left paracentral disc protrusion[, . . . which] causes mild central canal stenosis [and] no high grade neural foraminal stenosis" at T11-T12; a "tiny posterior disc osteophyte complex without significant stenosis" at T12-L1; "facet spurring . . . at the small posterior disc osteophyte complex mildly

encroaching the ventral thecal sac without high grade central or
neural foraminal stenosis" at L1-L2; "mild facet spurring[,] mild
posterior ligament thickening[, and] no high grade stenosis" at
L2-L3; a "tiny diffuse disc bulge[,] mild encroachment upon the
lateral recesses, [and] no high grade central or neural foraminal
stenosis" at L3-L4; a "central disc protrusion . . . which
appears to approach or possibly abut the nerve roots within left
greater than right recesses[, an] inferior extension of this disc
bulge contacting the left L5 nerve root[, and] no high grade
neural foraminal stenosis" at L4-L5; and "no high grade stenosis"
at L5-S1.  Tr. 774.

     The ALJ also noted the record contains conflicting reports
of decreased range of motion and extremity strength.  For
example, on April 28, 2017, treating physician Collin Lynn, M.D.,
noted Plaintiff had decreased range of motion, tenderness, pain,
spasm of her lumbar spine, and positive straight-leg raise.  Four
days earlier, however, examining physician, Gianina Best, M.D.,
found Plaintiff had negative straight-leg raise, "5 out of 5
strength to extension and flexion" in her lower extremities, and
normal gait.  Tr. 784.  Similarly, on April 30, 2018, Theo
Orchard, PA-C, treating physician's assistant, noted Plaintiff
had decreased range of motion in all planes; "tenderness to
palpation along paraspinal muscles, tenderness to palpation along
spinous processes"; and 2/5 strength "throughout bilateral lower

extremities." Tr. 755. Three days earlier on April 27, 2018, however, Christine Krishnamurthy, M.D., treating physician, noted Plaintiff had normal range of motion and muscle tone. Tr. 789. On May 16, 2018, Weijia Wang, M.D., treating physician, noted Plaintiff had "normal bulk" in both of her lower extremities with 5/5 strength throughout her lower extremities. Tr. 877.

The ALJ pointed out that PA-C Orchard noted on more than one occasion that Plaintiff "refused to perform foot dorsiflexion" when she had 2/5 throughout her lower extremities. PA-C Orchard also noted Plaintiff's "[d]ecreased strength may be due to neurologic compromise, pain, poor effort." Tr. 748, 755.

In addition, the ALJ noted the record does not reflect Plaintiff told any medical provider that she needed to lie down throughout the day or that she needed to sit with her feet elevated above chair level. The ALJ also noted Plaintiff reported in August 2016 that she cares for two children as well as her two nephews. Tr. 702. In September 2016 Plaintiff reported she "is active with . . . 4 children." Tr. 706.

The Court concludes on this record that the ALJ did not err when he partially rejected Plaintiff's testimony regarding the intensity, persistence, and limiting effects of her symptoms because the ALJ provided clear and convincing reasons supported by substantial evidence in the record for doing so.

**II.  The ALJ did not err when he partially rejected the opinion of PA-C Orchard, treating physician's assistant.**

Plaintiff alleges the ALJ erred when he partially rejected the opinion of PA-C Orchard, treating physician's assistant.

Medical sources are divided into two categories: "acceptable" and "not acceptable."  20 C.F.R. § 416.902. Acceptable medical sources include licensed physicians and psychologists.  20 C.F.R. § 416.902.  Medical sources classified as "not acceptable" include, but are not limited to, nurse practitioners, therapists, licensed clinical social workers, and chiropractors.  SSR 06-03p, at *2.  Factors the ALJ should consider when determining the weight to give an opinion from those "important" sources include the length of time the source has known the claimant and the number of times and frequency that the source has seen the claimant, the consistency of the source's opinion with other evidence in the record, the relevance of the source's opinion, the quality of the source's explanation of his opinion, and the source's training and expertise.  SSR 06-03p, at *4.  The ALJ must explain the weight assigned to other sources to the extent that a claimant or subsequent reviewer may follow the ALJ's reasoning.  SSR 06-03p, at *6.

On February 2, 2018, PA-C Orchard completed a form in which he noted Plaintiff suffers from low-back pain, carpal-tunnel syndrome, meralgia paresthetica, and PTSD.  PA-C Orchard noted

Plaintiff had decreased grip strength and bilateral lower-extremity weakness.  PA-C Orchard stated Plaintiff needed to lie down "fairly frequently" during the day "Plaintiff states, for about 1 hour each" time.  Tr. 669.  PA-C Orchard noted Plaintiff has "PTSD[, which is] known to predispose [Plaintiff] to dysfunctional pain processing and result in chronic centralized pain and poor pain coping mechanisms."  Tr. 669.  PA-C Orchard stated work "on a regular and continuous basis" would cause Plaintiff's condition to deteriorate because she "needs to address her physical and mental ailments at this time.  In future after appropriately treated [Plaintiff] may be able to return to work."  Tr. 669.  Finally, PA-C Orchard stated Plaintiff would likely miss four or more days of work per month if she "attempt[ed] to work a 40-hour per week schedule."  Tr. 670.

The ALJ gave only partial weight to PA-C Orchard's opinion on the grounds that he failed to point to any clinical findings to support his opinion that Plaintiff would miss four or more days of work per month, PA-C Orchard had begun treating Plaintiff only three months before he made his statement, his opinion that Plaintiff would need to lie down "fairly frequently" is based on Plaintiff's self-report, certain conditions he asserted Plaintiff suffers from have not been diagnosed by any medical professional, and his assessment of Plaintiff's limitations is contradicted by the record.

The Court concludes on this record that the ALJ did not err when he gave only some weight to PA-C Orchard's opinion because the ALJ gave reasons germane to PA-C Orchard based on substantial evidence in the record.

**III. The ALJ did not err when he relied on the VE's testimony.**

Plaintiff alleges the ALJ erred when he relied on the VE's testimony that Plaintiff can perform other jobs in the national economy.

If the Commissioner reaches Step Five, he must determine whether the claimant is able to do any other work that exists in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  *See also Keyser*, 648 F.3d at 724-25.  At Step Five the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can perform.  *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010).  The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2.

At the hearing the ALJ asked the VE if a hypothetical individual who had the same RFC as Plaintiff could perform other jobs that exist in significant numbers in the national economy. The VE testified such an individual could perform the job of usher with 64,000 jobs nationally, children's attendant with

50,000 jobs nationally, and sandwich-board carrier with 9,500

jobs nationally.  The VE stated his testimony was consistent with

the *Dictionary of Occupational Titles* (DOT).  Plaintiff's counsel

asked the VE whether the usher job was for "a full-time position

or . . . just on special events."  Tr. 82.  The VE explained:

> There's both part-time and full-time.  What I
> would say is that most of those jobs are part-time
> in nature.  I have had clients that have those
> jobs on a full-time basis where it rotates from
> one arena to the next and they are part of a
> larger . . . contractor that deals with multiple
> sights, and so there are full-time.  What I've
> tried to do, counsel, is when I provide the job
> numbers on that, I tried to estimate the number of
> usher jobs that are only full-time and exclude the
> part-time jobs.

Tr. 82-83.  The VE stated he "calculate[s] just the DOT numbers

and then just full time."  Tr. 83.  Plaintiff's counsel asked the

VE how he calculated the full-time numbers "because in my

understand[ing] of that job . . . that still seems quite high."

Tr. 83.  The VE noted he did not do a "typical labor market

survey" but instead

> I use a software program that will allow me to
> manipulate the data such that I can exclude
> certain industries and . . . isolate to the best
> degree that I can the DOT numbers, and then it
> also allows me to isolate just the full-time jobs
> based on another set of data.  And then I am able
> to estimate, sort out, just the DOT numbers for
> that one job out of the OES numbers that I have.

Tr. 84.  The VE testified he used the same methodology to arrive

at the national numbers for the jobs of children's attendant and

sandwich-board carrier.  At the hearing Plaintiff's attorney

18- OPINION AND ORDER

noted he had an issue with the "full-time aspect of all of" the jobs identified by the VE. The ALJ noted the evaluation of job numbers was outside the scope of the hearing and permitted Plaintiff to file a post-hearing brief to address the issue.

On August 16, 2018, Plaintiff submitted a written objection to the VE's testimony related to the numbers of usher, children's attendant, and sandwich-board carrier jobs in the national economy. Plaintiff attached information from the Bureau of Labor Statistics - United States Department of Labor Occupational Projections and Training Data and noted the attached statistics "are for the OES group and not the specific job DOT number which is commonly reported by the vocational expert." Tr. 408. The numbers Plaintiff provided apply "if each [Occupational Employment Statistics] OES group is drilled down to [a] DOT job and those that represent full-time position[s]." Tr. 408. Thus, Plaintiff's counsel used the job numbers for the entire relevant OES group, divided it by the number of DOT codes within that group, and divided that result by the percent of full-time positions the OES lists for the larger group. Using that method yielded only 6,080 usher jobs; 6,080 children's attendant jobs; and 3,115 sandwich-board carrier jobs nationally. According to Plaintiff, those do not constitute a significant number of jobs in the national economy.

As noted, at Step Five of his opinion the ALJ found

Plaintiff could perform the jobs of usher, children's attendant, and sandwich-board carrier, which exist in significant numbers in the national economy. Plaintiff alleges the ALJ erred when he did so because he failed to resolve the "evidentiary conflict" related to the number of usher, children's attendant, and sandwich-board carrier jobs that exist in the national economy. Plaintiff relies on the Ninth Circuit's decision in *Buck v. Berryhill*, 869 F.3d 1040 (9th Cir. 2017), to support her position.

In *Buck* the VE testified at the hearing before the ALJ that the plaintiff could perform work as a "bottling line attendant, bottle packer, and conveyor belt maker," and these occupations "had national job numbers of 600,000, 8,800, and 235,000, respectively." *Buck*, 869 F.3d at 1047. The plaintiff's "attorneys, allegedly using the same software program as the VE, determined that there are only 231 positions nationally as a bottling line attendant; . . . 2,039 positions nationally as a bottle packer; . . . and 26 positions nationally as a conveyor belt maker." *Id*. The ALJ found the plaintiff could perform the jobs of bottling line attendant, bottle packer, conveyor-belt maker, which existed in significant numbers in the national economy. The district court affirmed the Commissioner's denial of the plaintiff's applications for SSI and DIB. The Plaintiff appealed the district court's decision to the Ninth Circuit and

asserted the ALJ erred when he relied on the VE's testimony

regarding the numbers of other jobs in the national economy that

the plaintiff could perform.  The Ninth Circuit explained:

> "An ALJ may take administrative notice of any
> reliable job information, including information
> provided by a VE." *Bayliss*, 427 F.3d at 1218.  "A
> VE's recognized expertise provides the necessary
> foundation for his or her testimony.  Thus, no
> additional foundation is required."  *Id*. . . .
> [It] is clear from the language of *Bayliss*, at
> least in the absence of any contrary evidence, a
> VE's testimony is one type of job information that
> is regarded as inherently reliable; thus, there is
> no need for an ALJ to assess its reliability.

Buck, 869 F.3d at 1051.  "VE testimony[, however,] is not

incontestable."  *Id*.  For example, "when it conflicts with the

DOT or the Medical-Vocational Grids the ALJ is required to

evaluate the VE's testimony."  *Id*.  The Ninth Circuit concluded

"the vast discrepancy between the VE's job numbers and those

tendered by Buck, *presumably from the same source*, is simply too

striking to be ignored."  *Id*. at 1052 (emphasis added).  The

Ninth Circuit, therefore, remanded the matter to the ALJ to

address the discrepancy.

　　　*Buck*, however, is distinguishable from this case.  As noted,

in *Buck* the plaintiff derived his version of the number of jobs

available in the national economy "from the same source" that the

VE used when he evaluated the number of jobs in the national

economy.  Here Plaintiff does not rely on the same source or

method of calculating jobs in the national economy as the VE.

In addition, Plaintiff's counsel does not provide any evidence that he has the same or similar professional qualifications as a VE that would support the reliability of his proposed method of calculating jobs in the national economy. Unlike the VE, whose "recognized expertise provides the necessary foundation for his or her testimony," Plaintiff's counsel has not established he is qualified to offer a different method from the method of the VE for calculating the number of jobs in the national economy.

Finally, numerous courts, including courts in this district, have relied on VE testimony that the jobs of usher and children's attendant exist in significant numbers in the national economy. *See, e.g., Evelia C. v. Saul*, No. 6:18-CV-01429-SB, 2019 WL 5855987, at *2 (D. Or. Nov. 8, 2019)("The VE placed the number of usher jobs in the national economy at 43,000, noting that while the number was actually higher, he cut it in half to account for the fact that many usher jobs are only part-time."); *Angelica E. v. Saul*, No. 5:18-cv-01025-MAA, 2019 WL 3531272, at *2 (C.D. Cal. Aug. 18, 2019)(100,000 usher jobs nationally); *Cavileer v. Comm'r*, No. CV 18-1341 (JBS), 2019 WL 413534, at *5 (D.N.J. Feb. 1, 2019)(35,000 children's attendant jobs nationally); *Kranicolas v. Comm'r*, No. 1:17-CV-1567, 2018 WL 2933864, at *6 (N.D. Ohio June 12, 2018)(90,000 usher jobs nationally); *Baumgartner v. Berryhill*, No. 2:15-CV-01912-GWF, 2017 WL 3242236,

at *3 (D. Nev. July 31, 2017)(86,527 jobs nationally); *Asaro v. Colvin*, No. 4:13CV2165 DDN, 2015 WL 667946, at *3 (E.D. Mo. Feb. 17, 2015)(21,400 children's attendant jobs nationally).

The Court concludes on this record that the ALJ did not err at Step Five when he relied on the VE's testimony regarding the number of usher, children's attendant, and sandwich-board carrier jobs that exist in the national economy.

## <u>CONCLUSION</u>

For these reasons, the Court **AFFIRMS** the decision of the Commissioner and **DISMISSES** this matter pursuant to sentence four of 42 U.S.C. § 405(g).

IT IS SO ORDERED.

DATED this 21st day of July, 2020.


/s/ Anna J. Brown

_____
ANNA J. BROWN
United States Senior District Judge


23- OPINION AND ORDER